# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

IN THE MATTER )
OF THE ESTATE OF ) ROW Folio No. 162046 DM-MLM
PHILLIP A KENNEDY, SR. )

Final Report:  December 30, 2024
Date September 10, 2024

## FINAL POST-TRIAL REPORT

Bayard J. Snyder, Esquire, SNYDER & ASSOCIATES, P.A., Wilmington, DE; *Attorney for Petitioners.*

Patricia A. Still, Bridgeville, DE; *Pro se Respondent.*

**MITCHELL, M.**

This is my ruling following the July 16, 2024, evidentiary hearing regarding the Estate of Phillip Kennedy Sr. Brothers, Peter Kennedy & Phillip A. Kennedy Jr. take exceptions to the second and final accounting submitted by their sister, Patricia A. Still, as the executrix of the estate. They claim Patricia: 1) improperly claimed commissions for Estate administration; 2) improperly allocated attorney fees to a beneficiary; and 3) improperly distributed estate funds. For the reasons stated herein, I find her $2,000.00 commission to be proper, but I do find that she improperly allocated attorney fees and fees charged by the Register of Wills. I find that the attorney fees and Register of Wills fees were attributable to the estate and each beneficiary should have shared in them equally. As such, I am surcharging the Executrix in the amount of $7,243.53 to correct her actions. This is my final report.

## I. BACKGROUND[1]

The parties, Peter Kennedy and Phillip A. Kennedy Jr. (together, the "Petitioners") and Patricia Still (the "Respondent"), are siblings and the children of Phillip A. Kennedy Sr. (herein after, the "Decedent").[2] Phillip Kennedy Sr. passed away on October 18, 2014.[3] Prior to his passing, the Decedent lived in a home

---

[1] The facts in this report reflect my findings based on the record developed at trial on July 16, 2024. I grant the evidence the weight and credibility I find it deserves. Citations to the record are in the form of Docket Item ("D. I.") and identified by their entry number. Citations to the trial transcript are in the form of "Tr. __.".

[2] D. I. 3.

[3] D. I. 2.

located at 2227 Centerville Road, Wilmington, DE, 19808 (hereinafter, "the Home").[4] He is survived by eight children, Phillip A. Kennedy Jr., Paula M. Wilson, Patricia A. Still, Pamela J. Giles, Patrick J. Kennedy, Paul J. Kennedy, Phyllis A. Cuomo, and Peter J. Kennedy.[5] The Decedent executed a Last Will and Testament ("the Will") dated August 13, 2014, and named his daughter, the Respondent, the executrix of his Estate.[6]

The Will directs the execution of the Decedent's estate.[7] Relevant here are Articles 5 and 6 of the Will. Article 5 of the Will directs the executrix to sell all real, personal, or mixed property for such amounts as the executrix deems best.[8] Article 6 of the Will devises and bequeaths the remainder of the Decedent's property in equal shares to his eight children.[9]

The Register of Wills ("ROW") granted letters testamentary to the Respondent on October 30, 2015.[10] In accordance with the letters, an initial inventory was due on or before January 30, 2016, and an initial accounting was due

---

[4] D. I. 9.

[5] D. I. 3.

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] D. I. 4.

on or before October 30, 2016.[11] Just before the deadline, on January 26, 2016, the ROW accepted the Respondent's 60-day extension request to file the initial inventory.[12] Nonetheless, the Respondent failed to file the inventory by the new March 31, 2016, deadline.[13] The Respondent also failed to file the first accounting by the October 30th deadline.[14] On November 2, 2016, the ROW notified the Respondent of the overdue inventory and that a summons may be issued if the Respondent did not file the inventory by December 2, 2016.[15] The Respondent subsequently filed the initial inventory on December 1, 2016.[16] The initial inventory valued the Estate at $202,912.09.[17] The Home was valued at $192,000.[18] The Decedent's PNC checking account contained $8,658.49 and there were four

---

[11] *Id.*

[12] D. I. 7.

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] D. I. 8.

[17] *Id.*

[18] D. I. 11.

insurance policies with a combined cash value of $1,253.60.[19] The Decedent also owned furniture valued at $1,000.[20]

On March 20, 2017, the Respondent filed the first accounting with the ROW.[21] However, the first accounting was not final because the Respondent had not yet sold the Home.[22] On August 22, 2017, the Respondent signed an agreement with an auctioneer to auction the Home.[23] On the same day, the attorney for the Estate claimed unpaid legal fees in connection with the administration of the Estate.[24] Eight days later, the attorney for the Estate withdrew.[25] Within a few weeks, the disputes over the administration of the estate between the parties increased.[26]

The Petitioners initially contacted the estate attorney's office on or around March 2, 2017 to discuss problems with the estate.[27] On September 7th and 11th,

---

[19] D. I. 8 (Schedule C); Respondent's Post-Hearing Submission, pgs. 21-22 and 38 (Of the $1,253.60, Phyllis Garrett was the beneficiary of $255.87, Pamela Giles was the beneficiary of $346.83, Paul Kennedy was the beneficiary of $344.78, and Peter Kennedy was the beneficiary of $306.12).

[20] D. I. 11.

[21] *Id*.

[22] *Id.*

[23] D. I. 15.

[24] D. I. 12.

[25] D. I. 13; Tr. 10:12–15 (At trial, Petitioner testified that she fired the attorney to limit the legal fees).

[26] D. I. 14.

[27] Petitioner's Exhibit E. Respondent's Post-Hearing submission, pgs. 32-33. (Reference to communications with the attorney for the estate include communications with the attorney's staff. Respondent asserts Petitioner Peter Kennedy mainly communicated with

Peter Kennedy contacted the ROW to express concern over the future sale of the Home and his intent to file a Rule to Show Cause.[28] On September 11, 2017, the Estate's prior attorney claimed additional unpaid legal fees related to the administration of the Estate.[29]

On October 30, 2017, the deadline to file the second accounting for the Estate lapsed.[30] The ROW took no immediate action regarding the filing of the second accounting because a signed agreement to auction the Home was underway, and no proceeds from the sale could be reported.[31] On March 21, 2018, the Home was sold at auction for $230,000.[32] At this time, the Respondent had all the necessary information to file the second and final accounting.[33] However, she did not file the accounting because she was disputing the prior estate attorney's creditor claims for attorney fees.[34]

---

the paralegal at the attorney's office, who was a personal friend. *See* Respondent's Post-Hearing submission, pgs. 2-3.).

[28] *Id.*

[29] D. I. 16.

[30] D. I. 18.

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] D. I. 19; Jan. Tr. 6:15–17 (Citations in the form Jan. Tr. – refer to the transcript for the January 24, 2019 hearing.); Tr. 11:6-9.

In a letter received by the ROW on May 21, 2018, the Petitioners claimed that the Respondent was not acting in the best interests of the Estate.[35] In its December 21, 2018 response, the ROW outlined the remaining steps to close the Estate.[36] The ROW gave the Respondent until January 4, 2019 to resolve the disputed creditor claims.[37] When the Respondent did not have this resolved by the deadline imposed by the ROW, the ROW issued a summons for a Rule to Show Cause Hearing to be held on for January 24, 2019.[38]

In response to the Rule to Show Cause hearing being scheduled, on January 17, 2019, the Respondent submitted an incomplete second accounting that failed to include the net proceeds from the sale of the Home and address the creditor's claims filed against the Estate.[39] Because the submission was incomplete, (then) Master Griffin moved forward with the previously scheduled Rule to Show Cause hearing on January 24, 2019.[40]

---

[35] D. I. 17.

[36] *Id.*

[37] D. I. 19.

[38] D. I. 20.

[39] D. I. 21.

[40] D. I. 27.

At the hearing, Master Griffin ordered the Respondent to file a complete second and final accounting and close the Estate.[41] Master Griffin specifically advised the Respondent to "make a decision about what [she] want[ed] to do with the [attorney fees] claim."[42] She also advised that the beneficiaries may file exceptions to the accounting if they disagreed with her decisions.[43] The Respondent was assessed a $25.00 fee for the Rule to Show Cause hearing.[44]

The Respondent filed the second and final accounting and closed the Estate on February 8, 2019.[45] The estate was assessed a $200.00 late fee for the delay.[46] The Petitioners filed these exceptions on March 12, 2019.[47]

On March 29, 2019, the Estate's prior attorney removed her creditor claim against the Estate after the Respondent paid all past-due legal invoices.[48] On April 10, 2019, the Respondent submitted a letter co-signed by her siblings: Paul J. Kennedy, Phyllis A. Cuomo, Paula M. Wilson, Pamela J. Giles, and Patrick J.

---

[41] Jan. Tr. 21:7–8.

[42] Jan. Tr. 9:16–17.

[43] Jan. Tr. 10:1–2.

[44] Tr. 12:21-23; D. I. 26, pg. 4.

[45] D. I. 26.

[46] Tr. 12:23-24; D. I. 26, pg. 4.

[47] D. I. 41.

[48] D. I. 29.

Kennedy.[49] The letter stated several key details defending her administration of the Estate.[50] First, the Respondent insisted it was a mutual agreement among her family members to allow her sister, Pamela Giles, to live in the Home during renovations. Next, the Respondent claimed that she "willingly gave up the insurance money" despite being the sole beneficiary.[51] She claimed to have split the insurance money to be "fair" and "in order for all of the siblings to benefit."[52] Lastly, the Respondent claimed to have used her own money to pay all the Home's expenses and some unforeseen Estate expenses.[53]

In response to that letter, the Petitioners requested copies of all statements, policies, records, bills, real estate documents, and receipts for all expenses related to the Estate from the Respondent.[54] On April 25, 2019, the Respondent filed her

---

[49] D. I. 31.

[50] *Id.*

[51] *Id.*; Tr. 8:14-17.

[52] Tr. 17:11–14; D. I. 31; to date, the Respondent has not submitted any evidence showing that she was the sole beneficiary to any insurance policy. It is also unclear to the Court how much money she relinquished to the siblings from the alleged policy. The Court is aware that the Executrix had retained counsel for much of the administration of the estate and assumes she was properly counseled regarding her decisions with the policy; as such, this decision does not purport to reflect any declarations regarding this alleged transfer. Relatedly, correspondence from the estate's prior counsel shows the beneficiaries of the four insurance policies valued at $1,253.60 were Phyllis Garrett, Pamela Giles, Paul Kennedy, and Peter Kennedy. If there was an additional policy where the Respondent was the sole beneficiary, that information was not provided to the Court. *See* Respondent's Post-Hearing Submission, pg. 28.

[53] D. I. 31.

[54] D. I. 30.

8

response to the exceptions, indicating that she believed she was entitled to her commission because of her time spent administering the Estate.[55]

On May 9, 2019, Respondent distributed money to the beneficiaries in varying amounts.[56] Petitioner Phillip Kennedy Jr. received $23,895.75, while Petitioner Peter Kennedy received $14,138.49.[57] The other siblings/beneficiaries received the following: Paula M. Wilson received $23,907.18; Pamela J. Giles received $11,543.35; Patrick J. Kennedy received $23,907.18; Paul J. Kennedy received $23,562.40; Phyllis A. Cuomo received $23,651.31; and Patricia A. Still gave herself $48,019.02.[58]

This case was reassigned to me and on December 11, 2023, I sent a letter to counsel requesting a status report.[59] On December 21, 2023, the Petitioners requested a hearing on the exceptions.[60] On March 5, 2024, I scheduled an

---

[55] D. I. 41.

[56] Tr. 6:17-7:20. (Per the second and final accounting, the Estate balance to be distributed evenly among the beneficiaries was $180,529.84. If this balance were distributed as eight equal shares, each beneficiary would have received $22,566.23).

[57] *Id;* Petitioner's Exhibit D.

[58] Tr. at 4:17–6:2; Respondent's Post-Hearing Submission, pgs. 21-22. Although Pamela Giles' distribution was reduced, this Reduction is not being contested so it is not addressed here. Furthermore, Respondent testified that Ms. Giles' distribution was reduced because the Respondent provided her advancements, and they were related to bills during Ms. Giles' stay in the Decedent's home. Tr. 32:15–22.

[59] D. I. 50 (no reassignment letter on the docket).

[60] D. I. 51.

9

evidentiary hearing on the exceptions for June 12, 2024.[61] That hearing was canceled due to insufficient notice to the Respondent.[62] Following proper notice, I heard the exceptions on July 16, 2024.[63]  At the conclusion of the Hearing, the parties agreed to provide post-hearing submissions within two weeks of receiving the hearing transcript.[64] Post-hearing submissions were completed on September 10, 2024;[65]

## II.   ANALYSIS

Petitioners assert that the Executrix of the Estate has: 1) improperly claimed commissions for Estate administration; 2) improperly allocated attorney fees; and 3) failed to make distributions in accordance with the terms of the Will.[66]

Under Delaware Court of Chancery Rule 184, a beneficiary of an estate may dispute an inventory or accounting filed under the estate with the ROW by filing exceptions before this Court in accordance with the rule.[67]  Under Court of Chancery

---

[61] D. I. 53.

[62] D. I. 58.

[63] D. I. 62.

[64] *See* D.I. 62.

[65] *See* D.I. 64-65. The post-hearing submissions were to be provided within two weeks of the parties receiving the official transcript. Although the Respondent's submission was provided outside of the two-week deadline, in the spirit of leniency towards *pro se* parties, I have reviewed and considered her submission with this final report.

[66] D. I. 41.

[67] Ct. Ch. R. 184.

Rule 198, the burden of proof rests with the executrix to prove that she properly prepared and filed the inventory and accounting.[68]

## A. The Respondent's commission amount is reasonable.

The Petitioners allege that the Respondent should not be paid a commission for her administration of the Estate.[69] The Respondent claims her commission is fair considering the time and effort she spent administering the Estate.[70] Under Court of Chancery Rule 192, an executrix can receive commissions in a *reasonable amount* for services related to the administration of the Estate.[71] A commission for the administration of an estate "represents compensation to the personal representative for his own services in collecting the assets, checking into and paying bills, and performing the various duties which may be necessary, and his trouble and incidental expenses incurred thereby."[72] Under Rule 192(b), the Court must evaluate time spent administering the estate, risks and responsibilities involved, the difficulty of questions regarding the estate, the executrix's skill and experience, language from the will regarding commissions, similar rates for services performed, the value or character of the assets involved, any loss of business from accepting the

---

[68] Ct. Ch. R. 198.

[69] D. I. 28.

[70] *Id.*

[71] Ct. Ch. R. 192.

[72] *In re Whiteside's Est.*, 258 A.2d 279, 282 (Del. 1969).

administration, and the benefits obtained by the executrix for the administration.[73] Additionally, under 12 *Del. C.* § 2305(c), the Court may reduce commissions if required filings do not occur within their prescribed periods.[74]

Here, I find the Respondent is entitled to her $2,000 commission. Considering all factors under Rule 192(b), $2,000 (which represents 1.1% of the Estate's value) is not an excessive award for administering an estate with eight beneficiaries, a home that had to be sold, creditors paid, and $180,529.84 in assets.[75] Additionally, the Respondent organized all required repairs to the electric and foundation of the Home within the Estate prior to its sale.[76] Further, the Respondent hired an attorney and an auctioneer to maximize estate property.[77] Accordingly, I find this commission is reasonable in proportion to the needs and size of the Estate.

Although I am given the discretion to reduce the commission due to late filings, I decline to do so under these facts. The Respondent filed the second and final accounting fifteen days before the deadline issued by (then) Master Griffin at the Rule to Show Cause hearing.[78] Although the Respondent previously failed to

---

[73] *In re Est. of Link*, 2011 WL 2084161, at *1 (Del. Ch. May 5, 2011).

[74] 12 *Del. C.* § 2305.

[75] D. I. 26.

[76] *Id.*

[77] *Id.*

[78] *Id.*

12

provide a second and final accounting before the due date of October 30, 2017, she did not have proceeds to report until the sale of the home.[79] She also attributed the delay in filing the second and final accounting until ordered at the Rule to Show Cause hearing, because she was negotiating the outstanding claim for attorney fees against the Estate.[80] Although the Respondent could have requested a stay of the deadline, by that time, she was unrepresented.[81] Given the amount of work she put in as the personal representative, I am inclined to afford her some leniency in this particular circumstance.

**B.** **The Respondent improperly allocated fees to the Petitioner Peter Kennedy and should be surcharged.**

Petitioners also claim that the Respondent improperly allocated attorney fees to one beneficiary, Peter Kennedy.[82] The Respondent claims that the high legal fees are due to the Petitioners' interference with the estate administration by overly engaging with the Estate's attorney starting in March of 2017 and continuing through the fall of that year.[83] As such, the Respondent asserts that the attorney fees should

---

[79] Ct. Ch. R. 192; D. I. 18.

[80] D. I. 19; D. I. 26.

[81] D. I. 18; *Wanamaker v. Wanamaker*, 2024 WL 416498, at *5 (Del. Ch. Feb. 5, 2024).

[82] D. I. 41.

[83] *Id.*

solely come out of Petitioner Peter Kennedy's distributions and she ultimately deducted them from his beneficial interest.[84]

In the context of estate administration, the general rule is that attorney fees are considered an expense of the estate.[85] "The rational[e] behind this rule is that the personal representative and his or her attorney is providing a service to the estate and its beneficiaries by properly and efficiently administering the estate."[86] As a policy matter, attorney fees *could* be charged to a beneficiary when the beneficiary has acted in bad faith causing the fees.[87] This is the case when a beneficiary acts unreasonably or in bad faith when contacting counsel for the Estate.[88]

Although the Respondent assessed the attorney fees against Petitioner Peter Kennedy and deducted them from his distribution, I find they should have been attributed to the Estate.[89] The Petitioners initially contacted the Estate's attorney on or around March 2, 2017 to discuss problems with the Estate.[90] Fees from

---

[84] Tr. 12:18-24; Respondent's Post-Hearing Submission, pgs. 21-22.

[85] *Est. of Chambers*, 2020 WL 3173032, at *3 (Del. Ch. June 12, 2020) (citing *In re Est. of Pusey*, 1997 WL 311503, at *3 (Del. Ch. May 23, 1997)).

[86] *Id.*

[87] *Matter of Est. of O'Neill*, 2024 WL 1317063, at *7 (Del. Ch. Mar. 28, 2024), *adopted sub nom. In re O'Neill* (Del. Ch. 2024) (stating that attorney fees from beneficiaries challenging the administration of the estate will be assessed against the estate only where the challenge is in good faith).

[88] *Id.*

[89] Tr. 12:18-24; Respondent's Post-Hearing Submission, pgs. 21-22.

[90] *Id.*

14

beneficiaries contacting an estate's attorneys are a foreseeable expense when an estate remains open for a prolonged period.[91] The Petitioners' contact with the Estate's attorney is not a significant part of the total attorney fees and does not warrant individually assessed fees against Petitioner Peter Kennedy.[92] The Respondent, in her role as Executrix of the Estate, has a duty to communicate with the beneficiaries regarding the administration of the estate,[93] and there is insufficient evidence to suggest that Petitioner Peter Kennedy contacted counsel in bad faith. Moreover, in accordance with the legal invoices, other beneficiaries and even the Respondent's spouse, had communications and/or meetings with the attorney for the estate but their shares were not reduced. Therefore, because the attorney fees relate to communication with the beneficiaries, they fall within the administration of the estate and were improperly allocated by the Respondent.

Additionally, Respondent testified that she also reduced Petitioner Peter Kennedy's amount by $225.00, which represents additional fees the Register of Wills charged the Estate.[94] Respondent indicates this stems from Petitioner Peter

---

[91] *Matter of Pusey*, 1997 WL 311503, at *4 (Del. Ch. May 23, 1997).

[92] Petitioner's Exhibit E.

[93] *IMO Est. of Rose*, 2019 WL 2996887, at *7 (Del. Ch. July 9, 2019); An executrix of an estate stands in the position of a fiduciary and therefore owes a duty of care, loyalty, and good faith to the beneficiaries.

[94] Tr. 12:18-24.

Kennedy constantly calling and showing up at the Register of Wills office.[95] $25.00 of this represented the charge for the Rule to Show Cause hearing in January of 2019.[96] The remaining $200.00 represents the late fee for the second and final accounting.[97] Although Respondent believes these should be attributed to Petitioner Peter Kennedy, these expenses were related to her administration and failing to timely file paperwork with the Register of Wills. As such, these expenses should also have been charged to the Estate and not deducted from Petitioner Peter Kennedy's share.

The Petitioners and the Respondent agree that the base amount each sibling would have received if the balance was equally distributed under the Will is $22,566.23.[98] According to the Respondent, the Petitioner Peter Kennedy's share was subsequently reduced by $8,044.75 representing attorneys fees, $225.00 in ROW's extra fees, and $8.57 in certified mail fees, for a total of $8,278.32. This amount should have been attributed to all 8 siblings for the reasons stated herein. Attributing this amount to each sibling would have resulted in Petitioner Peter

[95] Tr. 13:1-3.

[96] Tr. 12:21-23; D. I. 26, pg. 4.

[97] Tr. 12:23-24; D. I. 26, pg. 4.

[98] Petitioner's Post-Hearing submission, pg. 4; Respondent's Post-Hearing submission, pg. 1.

Kennedy's share of these expenses as $1,034.79 and not the $8,278.32 his share was reduced. As such, Petitioner Peter Kennedy is owed $7,243.53. Because the attorney fees and ROW fees should have been charged to the estate where each beneficiary would have effectively absorbed a 1/8 share of the cost, I recommend the Court surcharge the Respondent in the amount of $7,243.53. A total of 7/8 of the cost of the fees.[99]

When an administrator breaches their duties to the Estate and its beneficiaries and there is a resulting loss because of those breaches, the administrator will be subjected to a surcharge.[100] "A surcharge is, essentially, a sanction against a personal representative requiring the personal representative to fund (or refund) the estate because the personal representative improperly or poorly handled the estate, engaged in self-dealing, or improperly depleted estate assets. . . . [S]urcharges are normally tailored to remedy the specific harm caused, rather than to punish the personal representative."[101]

Here, I find the Respondent breached her duties to the Estate and its beneficiaries by improperly allocating fees to one beneficiary and reducing his share.

---

[99] $7,243.53 is calculated by the total attorney fees, ROW fee, and certified mail fee to Peter Kennedy ($8,278.32 ) being equally allocated among the beneficiaries ($1,034.79 per beneficiary) and subtracting $1,034.79 from the total attorney fees assessed against Peter Kennedy.

[100] *Del. Tr. Co. v. McCune*, 80 A.2d 507, 511 (Del. Ch. 1951).

[101] *In re Clark*, 2019 WL 3022904, at *7 (Del. Ch. July 9, 2019).

Because the Estate is closed and the misallocation by Respondent only affected Peter Kennedy, the surcharge should be paid in full to Peter Kennedy and account for his 1/8 share in the fee at $1,034.79. This properly accounts for the harm the Respondent caused to the beneficiary Peter Kennedy when his share was improperly reduced. I decline to award a judgment to Respondent from the other beneficiaries to account for their share of the fees as the mistake is the Respondent's error.

### C.     Except for Peter Kennedy, the unequal distributions under the Will were justified.

The Petitioners claim Respondent did not execute the Will as written by the testator.[102] Article 6 of the Will directs the Respondent to devise and bequeath the remainder of the Decedent's property "in equal shares to his eight children, Phillip A. Kennedy Jr., Paula M. Wilson, Patricia A. Still, Pamela J. Giles, Patrick J. Kennedy, Paul J. Kennedy, Phyllis A. Cuomo, and Peter J. Kennedy."[103] The Respondent sold the home on March 21, 2018, for $230,000 and reported total proceeds from the sale of $204,134.38.[104] The Respondent claimed $20,139.59 in administrative expenses, including $8,044.75 for attorney fees paid to the Estate attorney and $2,000 for the Respondent's commissions.[105] Additionally, closing

---

[102] D. I. 28.

[103] D. I. 3 (Will at pgs. 1-2).

[104] D. I. 26.

[105] *Id.*

18

costs totaled $3,464.91, leaving a balance of $180,529.84 to be distributed from the Estate.[106]

The Will devises the remainder of the Estate in equal shares to the eight beneficiaries.[107] If the Respondent had distributed the proceeds in accordance with Article 6 of the Will, each beneficiary would have received an equal distribution in the amount of $22,566.23.[108] Instead, the Respondent distributed proceeds from the Estate in varying amounts as mentioned above.[109]

There is no ambiguity or complicated distribution scheme in this matter. The Will devises the proceeds in eight equal shares.[110] However, some of the beneficiaries' shares were reduced to balance out the $1,253.60 cash value of the insurance policies that four of the beneficiaries received.[111] That money was then evenly split between all eight beneficiaries.[112] It appears the siblings agreed to this

---

[106] *Id.*

[107] D. I. 3 (Will at pgs. 1-2).

[108] *Id;* D. I. 26; Petitioner's Post-Hearing submission, pg. 4; Respondent's Post-Hearing submission, pg. 1.

[109] Tr. 6:17-7:20.

[110] D. I. 3. (Will at pgs. 1-2).

[111] Respondent's Post-Hearing Submission, pgs. 21-22 and 38 (Of the $1,253.60, Phyllis Garrett was the beneficiary of $255.87, Pamela Giles was the beneficiary of $346.83, Paul Kennedy was the beneficiary of $344.78, and Peter Kennedy was the beneficiary of $306.12).

[112] *Id.*

arrangement and is not being disputed by the Petitioners, so I decline to alter the insurance distributions. Also, the Respondent's reimbursements for the Respondent's out of pocket expenses also appear to be in order.

The only distributions or reductions that appear to be improper under the Will are the attorneys fees, ROWs fees, and the certified mail fee assessed to Petitioner Peter Kennedy. The Respondent, even after this Court's clarification, assessed all attorney fees and the ROW fees against Petitioner Peter Kennedy's shares.[113] For the reasons previously stated above, these fees were attributable to the Estate and the Respondent will be surcharged for this incorrect distribution by having to reimburse Petitioner Kennedy what he should have received if Respondent acted in accordance with the terms of the Will.

## III.   CONCLUSION

For the reasons stated herein, the Petitioners' request to reduce commissions is denied. I find the $2,000 commission to be reasonable under the circumstances for the administration of this estate. I further find that the Respondent improperly allocated estate fees to Petitioner Peter Kennedy which should have been attributable to the Estate. Therefore, I order the Respondent to reimburse Petitioner Peter Kennedy $7,243.53 within 30 days, or a judgment will be issued against her.

---

[113] Tr. 11:17-19; Tr. 12:16-13:3; Petitioner's Exhibit E.

This is a Final Report under Court of Chancery Rule 144. Exceptions may be taken within eleven days of the date hereof. [114]

---

[114] *See* Ct. Ch. R. 144(d)(1) (In "[a]ctions that are not summary or expedited… [a] party taking exceptions must file a notice of exceptions within 11 days of the date of the Final report or Draft Report." ). To the extent, either party has an objection to the mathematical calculation, a motion for reargument under Court of Chancery Rule 59(f) or a motion for relief from judgment due to a clerical error under Court of Chancery Rule 60 are more appropriate options in lieu of filing exceptions.